IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Meredith Sivi,

        Plaintiff,

v.

Franklin County Guardianship Service Board, et al.,

        Defendants.

Case No. 2:24-cv-4191

Judge Graham

Magistrate Judge Jolson

Opinion and Order

Plaintiff Meredith Sivi brings this action concerning the guardianship of her adult daughter, A.K, who has been found in state court to require guardianship due to a mental impairment and developmental disabilities. Named as defendants are the Franklin County Guardianship Service Board, Upreach, LLC, and the Franklin County Board of Developmental Disabilities. The complaint asserts claims under 42 U.S.C. § 1983 for alleged violations of Sivi's constitutional rights and asserts various claims under state law.

This matter is before the Court on plaintiff's pro se motion for a preliminary injunction, which is denied for the reasons stated below.

**I.    Background**

    **A.    The Complaint**

        **1.    Factual Allegations**

Sivi was represented by legal counsel when this suit was filed in November 2024. The Complaint is verified and it alleges that, at the request of Sivi and A.K.'s father, A.K. was declared to be incompetent in March 2019 by the Franklin County Court of Common Pleas, Probate Division. Sivi and the father initially served as co-guardians of A.K., but the probate court appointed defendant Franklin County Guardianship Service Board ("GSB") as sole guardian in December 2019. *See* O.R.C. § 2111.02(A) (empowering probate courts to appoint guardians of a minor or incompetent). The GSB is a creation of state law and is a political subdivision of the State. *See* O.R.C. § 2101.026.

A.K. lived with Sivi, who was her Independent Service Provider until April 30, 2021. *See* O.A.C. 5123-2-09 (authorizing the Ohio Department of Developmental Disabilities to certify individuals to provide care for developmentally disabled persons). In May 2021, GSB engaged

1

defendant Upreach to be A.K.'s service provider.  Upreach is a for-profit limited liability company doing business in Ohio.  In May 2021, A.K. began living with her father for three days a week, with Upreach providing care services, and she began attending a day program twice a week at a facility affiliated with Upreach.  Sivi remained as A.K.'s representative Social Security payee until December 2021.  In January 2022, the Social Security Administration approved Upreach as A.K.'s payee.

Upreach caused A.K. to switch cell phone providers, which resulted in a breach of contract with the prior provider.  When the prior provider sought to collect an amount still owing, Upreach required Sivi to pay it.

Sivi alleges that she has expended thousands of dollars paying for various expenses and bills for A.K..  The costs she has incurred include the cell phone bill, rent, food, clothing, and medical expenses. Upreach allegedly promised to reimburse Sivi for all of the expenses over a two-year period but later refused to reimburse her even after she submitted receipts.

In October 2023, defendant Franklin County Board of Developmental Disabilities ("FCBDD") investigated a claim by Upreach that Sivi had made false allegations about Upreach's care of A.K.  According to Sivi, she had complained to Upreach about deficiencies in A.K.'s diet and living conditions and about Upreach's failure to reimburse Sivi for her out-of-pocket expenses.  In retaliation, Upreach filed a "Major Unusual Incident" ("MUI") with FCBDD in which it allegedly made false accusations of Sivi having exploited A.K. by including her (an incompetent person) as a contracting party on Sivi's lease and cell phone contact.

Sivi alleges that she did not receive notice of the MUI and did not have an opportunity to defend herself against the accusations.  As a result of the MUI, FCBDD placed her on a published "abuser" registry, and her application to renew her certification to be an Independent Service Provider was later denied by the Ohio Department of Developmental Disabilities because of the MUI.

In December 2023, A.K. was moved into an apartment by GSB, with the coordination of Upreach and FCBDD.  Upreach became A.K.'s full-time caregiver.

Sivi alleges that she was not consulted prior to A.K.'s move into an apartment, and that she was excluded from the transition process as A.K. began to live with new roommates.  Sivi was not allowed to enter A.K.'s apartment, but had to pick her up in the parking lot.

In 2024, Sivi reported her concerns about Upreach's failure to properly care for A.K.'s health and wellbeing to GSB.  GSB allegedly retaliated against Sivi by purporting to investigate mistreatment by Sivi and by restricting her ability to visit A.K.  The restrictions included requiring that Sivi's visits

2

be supervised by Upreach staff and occur in a public space. GSB also reduced the number of hours she could spend with A.K.

Sivi maintains that beginning in 2024 she has suffered from emotional stress and anxiety which causes her to be unable to drive a motor vehicle, thus limiting her ability to travel to visit A.K. GSB has allegedly denied Sivi's requests to have visitations take place at her home.

### 2. Claims

The Complaint asserts eleven causes of action. There are five federal claims: Counts Three, Six, Seven, Eight, and Nine. There are six state law claims: Counts One, Two, Four, Five, Ten, and Eleven.

#### a. Federal Claims

Count Three is for violations of Sivi's right to procedural due process under the Fourteenth Amendment to the United States Constitution. FCBDD and GSB allegedly violated her due process rights by investigating the MUI and reaching a determination adverse to Sivi without providing her notice and an opportunity to be heard on the charge of exploitation.

Count Six alleges a violation of Sivi's right to equal protection under the Fourteenth Amendment. Asserting a "class of one" theory, the Complaint alleges that defendants have treated Sivi differently from others who are similarly situated to her because she advocated on behalf of A.K. The discriminatory treatment included restricting Sivi's access to A.K. and conducting investigations against her based on false accusations.

Count Seven asserts a conspiracy claim under 42 U.S.C. § 1985. The Complaint alleges that the defendants acted together with malicious intent, and out of retaliation against Sivi's advocacy for A.K., to deprive Sivi of her civil rights to due process and equal protection.

Counts Eight and Nine are for violations of the First Amendment. Count Eight is labeled "discrimination" and Count Nine is labeled "retaliation." Both counts rest of the same allegation that defendants retaliated against Sivi for exercising her rights to complain of the treatment A.K. was receiving and to oppose defendants' unlawful conduct. The retaliation included the filing of the MUI, the restrictions on Sivi's access to A.K., and the refusal to accommodate Sivi's limitations in being able to travel for visitations.

#### b. State Law Claims

Count One asserts a claim of promissory estoppel against GSB and Upreach. It alleges that defendants promised to reimburse Sivi for the expenses (phone, rent, food, clothing, and medical expenses) she incurred on A.K.'s behalf, but they failed to do so.

Count Two is for defamation. Sivi alleges that GSB and Upreach made false claims to FCBDD that she had exploited A.K. and they later falsely accused her of taking A.K. off premises during a supervised visit.

Count Four is for intentional infliction of emotional distress. Sivi claims that GSB's and Upreach's false accusations of her exploitation and mistreatment of A.K. caused Sivi to experience emotional distress with a manifestation of physical conditions, including post-traumatic stress disorder, muscle spasms, and obsessive-compulsive personality disorder.

Count Five asserts a civil conspiracy claim, alleging that defendants conspired to deprive Sivi of her civil rights in retaliation against her advocacy for A.K.

Counts Ten and Eleven both concern the expenses Sivi incurred to care for A.K. Count Ten is for unjust enrichment and Count Eleven is for promissory fraud. Sivi again alleges that she paid out-of-pocket for various costs, to the benefit of defendants, who failed to reimburse her despite promising they would do so.

### c. Demand for Relief

The Complaint seeks only monetary damages. It requests relief in the form of compensatory damages, non-economic damages, punitive damages, and an award of attorney's fees and costs.

### B. The Motion for Preliminary Injunction

After Sivi discharged her attorney (whose motion for leave to withdraw was granted), she filed the motion for preliminary injunction which is presently before the Court.

The motion contains a number of new, unsworn, factual allegations. Sivi alleges that Upreach and its employees are not calling A.K. by her given name. She alleges that an employee is engaging in inappropriate and unprofessional social media conduct (not involving A.K.) and is not fit to care for A.K. She complains that defendants have severely curtailed her access to A.K. – either through in-person visits or video calls – and that they have refused to allow her to make video recordings of her in-person visits.

Sivi further alleges that she needs to have a service animal present with her, but was denied access to A.K. on the grounds that Upreach does not allow dogs in its facilities.

Sivi contends that A.K.'s father is allowed unrestricted visitation with A.K. and is able to have her spend overnights at his residence, spend holidays with her, and go to religious services with her on every other Sunday. Sivi maintains that she is unable to spend weekends or holidays with A.K. and has been denied the right to engage in religious practices with her.

Finally, Sivi alleges in her motion that Upreach has misappropriated and wasted A.K.'s Social Security benefits.

In support for her motion, Sivi contends that she is likely to succeed on the merits of her claims. She states that her claims are ones under the Americans with Disabilities Act and § 1983. She alleges that defendants violated the ADA by not accommodating Sivi's service animal. She further alleges that both she and A.K. are disabled and have a need for visual communication and that Upreach violated the ADA by not allowing Sivi to participate in video calls with A.K.

Concerning her § 1983 claims, Sivi alleges that defendants have engaged in discrimination and retaliation against her. She contends that defendants have refused to allow her to have unrestricted visitations with A.K., including the opportunity to practice religious observances together. Sivi further maintains that defendants discriminated against her and have treated A.K's father more favorably by allowing him generous visitation rights with A.K.

Sivi seeks an injunction that would grant to her unrestricted visitation rights with A.K., including overnights, weekends, holidays, and the right to engage in religious practices together. She also seeks an order that Sivi be allowed to have uninterrupted video communication with A.K. and be allowed have a service animal during in-person visits. She additionally seeks an order requiring defendants to use A.K.'s given name and requiring that employees exhibiting unprofessional conduct be removed from caring for A.K. Sivi also seeks authorization to make video recordings of any supervised, in-person visits with A.K. in order to protect herself against false accusations by defendants.

## II. Legal Standard

Preliminary injunctions are available under Rule 65(a) of the Federal Rules of Civil Procedure. They are extraordinary remedies which are governed by the following considerations: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

"The party seeking the preliminary injunction bears the burden of justifying such relief," including showing likelihood of success and irreparable harm. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of

5

success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000); *accord Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012). The movant must further show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). A mere possibility of injury is not enough. *Id.*

### III. Discussion

The motion for a preliminary injunction must be denied for numerous reasons, procedural and substantive. From a procedural perspective, the Complaint does not demand injunctive relief, only monetary damages. Rule 8(a)(3) of the Federal Rules of Civil Procedure requires that a complaint contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Plaintiff's failure to put defendants on notice of a demand for preliminary injunctive relief is fatal to her motion. *See Frengler v. Gen. Motors*, 482 Fed. App'x 975, 977 (6th Cir. 2012) (holding that a "pleading must provide the opposing party with notice of the relief sought").

Similarly, plaintiff's motion rests largely on allegations which were not made in the Complaint and on legal claims (the ADA, First Amendment right to religious exercise) which were not asserted in the Complaint. Even in pro se cases, a "party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th Cir. 2010) (internal quotation marks omitted). Plaintiff's motion fails to establish the necessary connection between the injunctive relief sought and the conduct alleged in the Complaint.

And finally from a procedural standpoint, plaintiff has not asserted standing to sue on behalf of A.K. Certain of the requests for injunctive relief belong to A.K., such as allowing A.K. to engage in religious practices, requiring Upreach employees to call her by her given name, and ordering Upreach to remove employees exhibiting unprofessional conduct from caring for her. However, the Complaint is brought in Sivi's name alone. Sivi is not A.K.'s guardian or conservator, and the Complaint does not allege that she has standing to sue on A.K.'s behalf. *See* Fed. R. Civ. P. 17(c)(1) (identifying the representatives who may sue on behalf of an incompetent person); *see also Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 859 (7th Cir. 2007) (holding that because plaintiff was not his mother's guardian, he lacked standing to sue on her behalf).

Turning to the substance of the motion, the court finds that plaintiff is not likely to succeed on the merits. Plaintiff's motion asks the Court to override the visitation decisions and other arrangements (like video communications) made by A.K's duly-appointed guardian, GSB, and its

agent, Upreach. Her request runs squarely into the probation exception to federal subject matter jurisdiction. Under this exception, a federal court lacks jurisdiction to interfere with probate proceedings or to assume control over the property or person in custody of the state court. *See Markham v. Allen*, 326 U.S. 490, 494 (1946); *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 801–802 (6th Cir. 2015). A federal court cannot "elbow its way" into a dispute over "property or a person in the [probate] court's control." *Struck*, 508 F.3d at 860; *accord Chevalier*, 803 F.3d at 802. Thus, plaintiff's motion cannot be entertained insofar as it asks this Court to review the visitation rights and arrangements which have been established by GSB under the probate court's supervision. *See Struck*, 508 F.3d at 860 ("The *res*—the plaintiff's mother—is in the control of the guardian appointed by the state court, and decisions concerning the plaintiff's right of access to his mother and to her assets, her records, and her mail are at the heart of the guardian's responsibilities and are supervised by the court that appointed him. . . . [O]ur plaintiff is seeking to remove into the federal court the *res* over which a state court is exercising control. That is the sort of maneuver that the probate/domestic-relations exception is intended to prevent.").

To the extent the motion raises claims (belonging to Sivi and not A.K.) which potentially could fall outside the probate exception, plaintiff has not demonstrated a strong likelihood of success on the merits. Unlike the verified allegations of the Complaint, the motion's new allegations are unsworn and are otherwise without evidentiary support. Despite being challenged by defendants in the response briefs on this point, plaintiff did not attempt to correct the evidentiary deficiencies of her motion.

Moreover, the motion's allegations are conclusory. Assuming that an ADA claim exists outside of the probate exception, plaintiff has not provided factual allegations concerning the nature of her physical or mental condition or her limitations, so as to support an inference that she meets the definition of being disabled under the ADA or that having a service animal is a reasonable accommodation. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (elements of an ADA claim). The motion merely asserts, in conclusory fashion, that Sivi is disabled and needs a service animal. And assuming that a § 1983 equal protection claim exists outside of the probate exception, the motion lacks factual allegations to support an inference that defendants' allegedly preferential treatment of A.K.'s father (in terms of visitation rights) is without a rational basis. *See Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023) (to support an equal protection claim, plaintiff must show both that she was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment).

7

Turning to the other preliminary injunction factors, the Court finds that plaintiff will not suffer irreparable injury absent a stay. Rather, by not granting the requested injunctive relief, the Court will preserve the status quo of the various guardianship-related determinations made under the supervision of the probate court.[1] Granting an injunction would cause substantial harm to others, in that it would undo those determinations and disrupt the status quo for A.K. and her guardian. *Cf. University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (holding that the purpose of a preliminary injunction is to "preserve the relative positions of the parties").

### IV.     Plaintiff's Motion to Strike

Plaintiff has moved to strike FCBDD's recently-filed motion for judgment on the pleadings. Plaintiff argues that FCBDD's motion violates the Court's local rules on page limits, *see* S.D. Ohio Local Civil Rule 7.2(a)(3), and Federal Rule of Civil Procedure 11(b) because it is abusive and brought for the purpose of delay. The Court finds that plaintiff's motion is wholly without merit, as FCBDD included in its motion a combined table of contents and a clear and accurate summary, in compliance with the local rule. And the Court's review of FCBDD's motion finds no indication whatsoever of abusive or dilatory purposes.

The Court cautions plaintiff to take greater care in examining the applicable rules and defendants' filings prior to filing motions accusing defendants' counsel of misconduct.

### V.     Conclusion

Accordingly, plaintiff's motion for a preliminary injunction (Doc. 38) is DENIED. Plaintiff's motion to strike (Doc. 85) is DENIED.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: November 19, 2025

---

[1] The Court takes judicial notice that plaintiff has exercised her right to appeal various decisions of the probate court. Her appeal has been rejected on the merits. *See Matter of Guardianship of A.K.*, 2025-Ohio-917 (Ohio Ct. App.).