IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Meredith Sivi,                                          Case No. 2:24-cv-4191

          Plaintiff,                                Judge Graham

    v.                                                Magistrate Judge Jolson

Franklin County Guardianship Service
Board, *et al.*,
          Defendants.

Opinion and Order

      Plaintiff Meredith Sivi brings this action over issues which relate in one way or another to the guardianship of her adult daughter, A.K, who has been found in state court to require guardianship due to a mental impairment and developmental disabilities. Named as defendants are the Franklin County Guardianship Service Board, the Franklin County Board of Developmental Disabilities, and Upreach, LLC. The Complaint asserts claims under 42 U.S.C. § 1983 for alleged violations of Sivi's constitutional rights and asserts various claims under state law.

      This matter is before the Court on motions filed by each of the defendants for judgment on the pleadings. For the reasons stated below, the motions are granted.

I.     **Background**

    A.     **Factual Allegations**

      Sivi was represented by legal counsel when this suit was filed. The Complaint alleges that, at the request of Sivi and A.K.'s father, A.K. was declared to be incompetent in March 2019 by the Franklin County Court of Common Pleas, Probate Division. Sivi and the father initially served as co-guardians of A.K., but the probate court appointed defendant Franklin County Guardianship Service Board (GSB) as sole guardian in December 2019. *See* O.R.C. § 2111.02(A) (empowering probate courts to appoint guardians of a minor or incompetent). The GSB is a creation of state law and is a political subdivision of the State. *See* O.R.C. § 2101.026.

      A.K. lived with Sivi, who was her Independent Service Provider until April 30, 2021. *See* O.A.C. 5123-2-09 (authorizing the Ohio Department of Developmental Disabilities to certify individuals to provide care for developmentally disabled persons). In May 2021, GSB engaged defendant Upreach to be A.K.'s service provider. Upreach is a for-profit limited liability company

1

doing business in Ohio.  In May 2021, A.K. began living with her father for three days a week, with Upreach providing care services.  Sivi remained as A.K.'s representative Social Security payee until December 2021.  In January 2022, the Social Security Administration approved Upreach as A.K.'s payee.

Upreach caused A.K. to switch cell phone providers, which resulted in a breach of contract with the prior provider.  When the prior provider sought to collect an amount still owing, Upreach required Sivi to pay it.

Sivi alleges that she has spent thousands of dollars paying various expenses and bills for A.K..  The costs she has incurred include the cell phone bill, rent, food, clothing, and medical expenses.  Upreach allegedly promised to reimburse Sivi for all of the expenses over a two-year period but later refused to reimburse her even after she submitted receipts.

In October 2023, "Defendant GSB and/or Defendant Upreach" filed an incident report, called a "Major Unusual Incident" (MUI), with defendant Franklin County Board of Developmental Disabilities (FCBDD).  Compl., ¶ 54.  The MUI allegedly made false accusations of Sivi having financially exploited A.K. by including her (an incompetent person) as a contracting party on Sivi's lease and cell phone contact.  According to the Complaint, the MUI was filed in retaliation against Sivi because she had complained to Upreach about deficiencies in A.K.'s diet and living conditions and about Upreach's failure to reimburse Sivi for her out-of-pocket expenses.

FCBDD investigated the MUI and made a determination that the allegations of financial exploitation by Sivi were substantiated.  Sivi alleges that she did not receive notice of the MUI and did not have an opportunity to defend herself against the accusations.  As an alleged result of the FCBDD's determination,  Sivi's name was placed on a published "abuser" registry and her application to renew her certification to be an Independent Service Provider was later denied by the Ohio Department of Developmental Disabilities.

In December 2023, A.K. was moved into an apartment by GSB, with the coordination of Upreach and FCBDD.  Upreach became A.K.'s full-time caregiver.

Sivi alleges that she was not consulted prior to A.K.'s move into an apartment, and that she was excluded from the transition process as A.K. began to live with new roommates.  Sivi was not allowed to enter A.K.'s apartment, but had to pick her up in the parking lot.

In 2024, Sivi reported her concerns about Upreach's failure to properly care for A.K.'s health and wellbeing to GSB.  GSB allegedly retaliated against Sivi by purporting to investigate mistreatment by Sivi and by restricting her ability to visit A.K.  The restrictions included requiring that Sivi's visits

2

be supervised by Upreach staff and occur in a public space.  GSB also reduced the number of hours she could spend with A.K.

Sivi maintains that beginning in 2024 she has suffered from emotional stress and anxiety which causes her to be unable to drive a motor vehicle, thus limiting her ability to travel to visit A.K.  GSB has allegedly denied Sivi's requests to have visits with A.K. take place at Sivi's home.

### B.      Causes of Action

The Complaint asserts eleven causes of action.  There are five federal claims: Counts Three, Six, Seven, Eight, and Nine.  There are six state law claims: Counts One, Two, Four, Five, Ten, and Eleven.

#### 1.      Federal Claims

Count Three is for violations of Sivi's right to procedural due process under the Fourteenth Amendment to the United States Constitution.  FCBDD and GSB allegedly violated her due process rights by investigating the MUI and reaching a determination adverse to Sivi without providing her with her notice and an opportunity to be heard on the charge of financial exploitation.

Count Six alleges a violation of Sivi's right to equal protection under the Fourteenth Amendment.  Asserting a "class of one" theory, the Complaint alleges that defendants have treated Sivi differently from others who are similarly situated to her because she advocated on behalf of A.K. The discriminatory treatment consisted of GSB restricting Sivi's access to A.K. and FCBDD conducting an investigation against her based on the allegedly false MUI.

Count Seven asserts a conspiracy claim under 42 U.S.C. § 1985.  The Complaint alleges that the defendants acted together with malicious intent, and out of retaliation against Sivi's advocacy for A.K., to deprive Sivi of her civil rights to due process, equal protection, and free speech.

Counts Eight and Nine are for violations of the First Amendment.  Count Eight is labeled "discrimination" and Count Nine is labeled "retaliation."  Both counts rest on the same allegation that defendants retaliated against Sivi for exercising her rights to complain about the treatment A.K. was receiving and to oppose defendants' unlawful conduct.  The retaliation included the filing of the MUI, GSB's restrictions on Sivi's access to A.K., and GSB's refusal to accommodate Sivi's limitations in traveling for visits with A.K.

#### 2.      State Law Claims

Count One asserts a claim of promissory estoppel against GSB and Upreach.  It alleges that defendants promised to reimburse Sivi for the expenses (phone, rent, food, clothing, and medical expenses) she incurred on A.K.'s behalf, but they failed to do so.

3

Count Two is for defamation.  Sivi alleges that GSB and Upreach made false claims to FCBDD that she had exploited A.K. and they later falsely accused her of taking A.K. off premises during a supervised visit.

Count Four is for intentional infliction of emotional distress.  Sivi claims that GSB's and Upreach's false accusations of her exploitation and mistreatment of A.K. caused Sivi to experience emotional distress with a manifestation of physical conditions, including post-traumatic stress disorder, muscle spasms, and obsessive-compulsive personality disorder.

Count Five asserts a civil conspiracy claim, alleging that defendants conspired to deprive Sivi of her civil rights in retaliation against her advocacy for A.K.

Counts Ten and Eleven both concern the expenses Sivi incurred to care for A.K.  Count Ten is for unjust enrichment and Count Eleven is for promissory fraud.  Sivi again alleges that she paid out-of-pocket for various costs, to the benefit of defendants, who failed to reimburse her despite promising they would do so.

### 3. Demand for Relief

The Complaint seeks only monetary damages.  It requests relief in the form of compensatory damages, non-economic damages, punitive damages, and an award of attorney's fees and costs.

### C. Procedural Background

Sivi discharged her attorney soon after defendants filed their answers to the Complaint.  Sivi has since filed numerous *pro se* motions and miscellaneous documents.  Her filings represent something of a departure from the Complaint, in that she has sought to attack or undermine various determinations made within the scope of the guardianship proceeding that is under the supervision of the probate court.

In her motion for a preliminary injunction, for instance, Sivi sought unrestricted visitation rights with A.K. and other similar relief.  The Court denied her motion upon finding that it ran "squarely into the probate exception to federal subject matter jurisdiction."  Doc. 87 at PAGEID 998. In the same ruling, the Court noted that plaintiff's motion had made numerous unsupported factual allegations which were outside of the Complaint and had purported to raise legal claims which were not asserted in the Complaint.  The Court found that even considering the newly-raised matters, Sivi had not demonstrated a likelihood of success which would justify preliminary injunctive relief.

Each of the three defendants have filed motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Sivi responded with briefs in opposition to the motions filed by GSB and FCBDD.  She did not respond to the motion filed by Upreach.

## II.      Standard of Review

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard applied to motions for judgment on the pleadings is the same standard applicable to motions to dismiss under Rule 12(b)(6).  *See Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted).  However, the court need not accept as true legal conclusions or unwarranted factual inferences.  *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).  "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.     Discussion

### A.      The Probate Exception and the *Rooker-Feldman* Doctrine

Under the probate exception to federal subject matter jurisdiction, a federal court lacks jurisdiction to interfere with probate proceedings or to assume control over the property or person in custody of the state court.  *See Markham v. Allen*, 326 U.S. 490, 494 (1946); *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 801–802 (6th Cir. 2015).  A federal court cannot "elbow its way" into a dispute over "property or a person in the [probate] court's control." *Struck v. Cook Cnty Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007); *accord Chevalier*, 803 F.3d at 802.

Each of the motions for judgment on the pleadings argue that the probate exception prevents the Court from hearing this case.  The Court is inclined to agree with defendants.  Plaintiff's overall litigation efforts, including her *pro se* filings, mirror her motion for a preliminary injunction in

5

challenging various aspects of the administration of A.K.'s guardianship, such as A.K.'s diet and the hours and locations for which Sivi can visit A.K. *See Struck*, 508 F.3d at 860 ("The *res*—the plaintiff's mother—is in the control of the guardian appointed by the state court, and decisions concerning the plaintiff's right of access to his mother and to her assets, her records, and her mail are at the heart of the guardian's responsibilities and are supervised by the court that appointed him. . . . [O]ur plaintiff is seeking to remove into the federal court the *res* over which a state court is exercising control.  That is the sort of maneuver that the probate/domestic-relations exception is intended to prevent.").

This case appears to be the kind of case the United States Supreme Court had in mind when it affirmed the existence of a closely-related exception – the domestic-relations exception – to federal jurisdiction in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992).  The Supreme Court explained that the exception was rooted in the understanding that federal courts lack the authority and expertise to issue decrees which would require the retention of jurisdiction and deployment of social workers to monitor compliance with such matters as child custody.  *See Ankenbrandt*, 504 U.S. at 703–704 ("[S]tate courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees.").  That same concern is present here, with Sivi seeking this Court's intervention in the administration of A.K.'s guardianship.  Granting relief and monitoring compliance would necessarily entail oversight of the interactions Sivi has with A.K. and with defendants' staff members.  It would also entail to some degree "judicial supervision of a volatile family situation," a task for which "federal courts are not well suited." *Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir. 1982).

Despite these overall concerns, there is a way for this Court to take a more restrictive view of the probate exception and of plaintiff's claims so as to allow the exercise of federal jurisdiction.  In *Chevalier v. Est. of Barnhart*, the Sixth Circuit stated that the probate exception has "questionable origins" and emphasized that it should be "narrowly limited to three circumstances": (1) where the plaintiff seeks to probate a will, (2) where plaintiff seeks to annul a will, and (3) where plaintiff seeks to reach the *res* over which the state court has custody.  803 F.3d at 800–01.  The Sixth Circuit instructed courts to examine whether the legal claims are *in personam* or *in rem* actions.  *Id.*  If a claim is an *in personam* action – brought against a person for a violation of rights, rather than an *in rem* action brought to determine rights to a person or property subject to a court's control – then the claim does not fall within the probate exception.  *See id.* at 801–02.

In examining whether plaintiff's federal causes of action are *in personam* or *in rem*, the Court will confine itself to the four corners of the Complaint.  It asserts causes of action under § 1983 for violations of Sivi's rights under the Due Process and Equal Protection Clauses and under the First Amendment.  The alleged wrongful conduct includes the issuance of the MUI decision without Sivi receiving notice and acts of discrimination and retaliation taken against Sivi because she exercised her First Amendment rights.  Though the conduct may have occurred against the backdrop of the administration of A.K.'s guardianship, the claims themselves are *in personam*.  Should plaintiff prevail on the merits of her claims, the Court could grant her the monetary relief demanded in the Complaint without taking action which would interfere with or extend oversight into the administration of the guardianship.  Applying *Chevalier*, the Court thus finds that the probate exception does not prevent the consideration of Sivi's federal claims.

Defendants also argue that the *Rooker-Feldman* doctrine prevents the Court from considering plaintiff's claims because she is asking for review of decisions made by the probate court.  The *Rooker-Feldman* prevents a district court from entertaining a case brought by a state-court loser complaining of injuries caused by a state-court judgment and seeking federal court review and rejection of the judgment.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).  Again, the Court will confine its review to the Complaint itself, and the Court finds that the Complaint does not assert claims or seek relief which would run afoul of *Rooker-Feldman*.

### B.  GSB's and FCBDD's Motions for Judgment on the Pleadings

#### 1.  *Monell* Liability

The Complaint brings suit under 42 U.S.C. § 1983 for monetary damages against GSB and FCBDD, which are municipal entities.  *See* O.R.C. §§ 2101.026, 5126.  When suing a municipal entity for alleged constitutional violations, plaintiff must show that the municipal entity was "the moving force behind the injury alleged."  *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (internal quotation marks omitted).  The municipality becomes the "moving force" when it ratifies unconstitutional policies or has a custom of action, or inaction, which causes the constitutional violation.  *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978).

"A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights

7

violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

### 2. Equal Protection and First Amendment Claims

The Complaint alleges that defendants discriminated against Sivi in violation of the Equal Protection Clause by treating her differently because she advocated on behalf of A.K. GSB allegedly discriminated against Sivi by restricting her access to A.K. FCBDD allegedly discriminated against her by investigating the false accusations of the MUI.

Relatedly, the Complaint alleges that defendants discriminated and retaliated against Sivi in violation of the First Amendment. In response to Sivi's advocacy for A.K. and her opposition to defendants' treatment of A.K., GSB allegedly filed the false MUI against Sivi, imposed restrictions on her access to A.K., and refused to accommodate Sivi's limitations in being able to travel for visits with A.K.

### a. GSB

GSB argues that the Complaint fails to identify a municipal policy or custom which was the moving force behind the alleged violations of Sivi's rights. The Court agrees. The Complaint does not allege that any policy or custom was at work in how Sivi was treated. Though no individuals are named, it appears from the Complaint that the alleged wrongful actions were the result of individualized, discretionary decisions and not of municipal policy or custom. For instance, the Complaint alleges that in retaliation against complaints Sivi made about A.K.'s living conditions and diet, an employee of GSB filed the MUI against her. *See* Compl., ¶¶ 54, 56, 58. Similarly, one or more individuals at GSB decided to restrict Sivi's ability to visit A.K. and reduce the number of hours she could spend with A.K. *See id.*, ¶¶ 68–70. And someone with GSB allegedly denied Sivi's request concerning where the visitations took place when Sivi was unable to drive. *See id.*, ¶¶ 75–76.

The Complaint does not allege that GSB's alleged conduct occurred pursuant to a policy or custom. Nor does the Complaint support an inference that an official with final decision making authority ratified the allegedly unlawful actions. Rather, the Complaint attempts to hold GSB liable for the actions of its employees, which is not a permissible way of establishing municipal liability under *Monell*.

In response to GSB's motion for judgment on the pleadings, Sivi concedes that there was no policy by which GSB was acting and confirms that she is complaining of "unreviewed ad hoc decision-making." *See* Doc. 78 at PAGEID 939. But seeking to salvage her *Monell* claim, Sivi contends that GSB employees engaged in a pattern of "targeting" her and that GSB tolerated the violations of her

8

rights.  *Id.*  Sivi faults GSB's Director for failing to "establish constitutional protocols" which would have prevented the violations of her rights.  *Id.*

In order to prevail on a theory that a municipal entity had a custom of tolerance or acquiescence to federal violations, plaintiff must show: "(1) the existence of a clear and persistent pattern of violating federal rights . . .; (2) notice or constructive notice on the part of defendants; (3) the defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) that the defendants' custom was the 'moving force,' or direct causal link for the constitutional deprivation."  *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

The Complaint does not contain allegations which would support Sivi's current theory of tolerance or acquiescence.  While the Complaint alleges that GSB employees took a handful of illegal actions against Sivi, it does not allege the existence of the type of "widespread pattern" of violating federal rights necessary to support an inaction claim under *Monell.  Doe*, 103 F.3d at 513.  For example, there are no allegations of a prevalent practice among GSB employees of retaliating against parents who advocated on behalf of their developmentally disabled children.  Further, the Complaint contains no allegations showing that GSB's Director knew or should have known of the alleged violations of Sivi's rights and tacitly approved them.

Thus, the Court finds that GSB is entitled to judgment on the pleadings on plaintiff's Equal Protection and First Amendment claims.

### b.      FCBDD

The only conduct which the Complaint alleges that FCBDD took in violation of plaintiff's Equal Protection and First Amendment rights is that of initiating an investigation of the MUI.  The Complaint alleges that FCBDD chose to investigate the MUI out of discriminatory and retaliatory motives.  *See, e.g.*, ¶¶ 51, 151.

Here too the Complaint fails to allege a municipal policy or custom by which the constitutional violations occurred.  To be sure, there is a policy in play regarding the investigation of an MUI, but the policy is external to FCBDD and that fact is fatal to plaintiff's claims.  Ohio law requires all county boards of developmental disabilities to conduct investigations when a report of a major unusual incident is made.  *See* O.R.C. § 5126.313; O.A.C. § 5123-17-02(I).  Because there was no policy or custom belonging to FCBDD at work in its initiating an investigation, FCBDD could not have been the moving force causing the alleged constitutional violation.

9

The Court thus finds that FCBDD is entitled to judgment on the pleadings on plaintiff's Equal Protection and First Amendment claims.

### 3.    Due Process

The Complaint asserts a Due Process claim against GSB and FCBDD.  It alleges that once the MUI was filed, FCBDD investigated the claim of financial exploitation and sought GSB's input during the investigation.  FCBDD made a finding that Sivi exploited A.K., but allegedly did so without giving Sivi notice and opportunity to respond to the MUI.

With respect to GSB, the Complaint fails to allege that it acted pursuant to a policy or custom. Indeed the Complaint alleges that the involvement of GSB employees in the investigation "was outside Defendant GSB's authority, scope of designated duties, and/or responsibilities."  Compl., ¶ 113. Because GSB employees allegedly acted beyond the scope of their authority in assisting with FCBDD's investigation, GSB as a municipal entity was not the moving force behind the alleged due process violations.

Turning to FCBDD, once again Ohio law dictated FCBDD's handling of the MUI.  When an MUI is filed, FCBDD must comply with certain notification requirements.  It must, for instance, notify the disabled individual's guardian (who was GSB) and "providers of services as necessary to ensure continuity of care and support for the individual." *See* O.A.C. § 5123-17-02(H)(1)(a).  Not only was Sivi not among the persons entitled to notice of the filing of the MUI, but Ohio law affirmatively prohibited FCBDD from notifying her because she was "the primary person involved" in the alleged financial exploitation of A.K.  *Id.* at § 5123-17-02(H)(1)(e)(i) (mandating that the "provider will not make notification" to the primary person involved); *id.* at § 5123-17-02(C)(19) (defining the primary person involved as the person "alleged to have committed or to have been responsible for the . . . exploitation").  Likewise, Ohio law mandated that FCBDD issue its written decision (including its factual findings and determination as to whether the MUI was substantiated) without providing notice and an opportunity to be heard by the "primary person involved," who was Sivi.  *Id.* at § 5123-17-02(K)(3).

This suit does not challenge the constitutionality of Ohio law governing the handling of MUIs filed as to developmentally disabled individuals.  Instead it alleges that FCBDD violated Sivi's due process rights by not providing her with notice and an opportunity to be heard before issuing its written decision.  Because Ohio law, and not any municipal policy or custom, was the moving force behind the alleged constitutional violation, *Monell* liability cannot be established as to FCBDD.

The Court thus finds that the Due Process claims against GSB and FCBDD fail.

#### 4.     Section 1985 Conspiracy

The Complaint's final federal claim against GSB and FCBDD is for an unlawful conspiracy under 42 U.S.C. § 1985(3).  Plaintiff asserts that defendants (along with Upreach) conspired to deprive Sivi of her rights to due process, equal protection, and free speech.

To bring a civil conspiracy claim under § 1985(3), a plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (internal quotation marks omitted).

The conspiracy claim fails for two primary reasons.  First, the Complaint does not allege that an agreement or plan existed among the defendants.  "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action."  *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985).  While an "[e]xpress agreement among all the conspirators is not necessary to find the existence of a civil conspiracy," plaintiff must show "that there was a single plan."  *Id.* at 944.  Here, the Complaint merely alleges that defendants "conspired" without providing factual content to support an inference that they had a plan or agreement to cooperate in depriving Sivi of her rights.  Compl., ¶ 156.  This deficiency alone causes the conspiracy claim to fail.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) (holding that "vague and conclusory allegations" are insufficient to state a conspiracy claim); *In re Flint Water Cases*, 384 F. Supp. 3d 802, 851 (E.D. Mich. 2019) ("In the context of § 1985(3), plaintiffs shoulder a heavy pleading burden.  'Conspiracy claims must be pled with some degree of specificity[.]'") (quoting *Gutierrez*, 826 F.2d at 1538–39).

Second, the conspiracy must be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976) (explaining that a § 1985(3) claim "must be founded on a class-based invidious discrimination.").  The Complaint does not identify any class-based animus which motivated defendants' alleged conduct.  For instance, the Complaint does not allege that defendants' actions were motivated by Sivi's gender or race.  Instead, the Complaint asserts that defendants acted in retaliation against Sivi for her advocacy on A.K.'s behalf and their "general disdain for Ms. Sivi as an individual."  Compl., ¶ 156.  Such an alleged motivation does not support a § 1985 conspiracy claim.  *See Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) ("A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender.").

In response to defendants' motions, Sivi asserts that defendants were motivated by animus against her status as a disabled individual.  *See* Doc. 78 at PAGEID 940.  Sivi contends that she has several mental health conditions, including anxiety and post-traumatic stress disorder.  This is not the first time she has made reference to being disabled in her *pro se* filings.  As the Court explained in its decision denying plaintiff's motion for a preliminary injunction, the Complaint does not assert a claim under the Americans with Disabilities Act, nor has plaintiff provided sufficient factual allegations concerning the nature of her mental conditions or her limitations, so as to support an inference that she meets the definition of being disabled under the ADA.  *See* Doc. 87 at PAGEID 998.  And as they concern the conspiracy claim, Sivi's new allegations are too vague and conclusory to support an inference that her alleged disability was a motivating factor behind defendants' conduct.

### C.      Upreach's Motion for Judgment on the Pleadings

The Complaint names Upreach as a defendant on her Equal Protection and First Amendment claims.  Nearly all of the factual allegations against Upreach appear to relate to plaintiff's state law claims.  Of the allegations made in support of Counts Six, Eight, and Nine (the Equal Protection and First Amendment claims), the only conduct by Upreach mentioned is its possible filing of the MUI. *See* Compl., ¶ 162.  The Complaint alleges that "Defendant GSB and/or Defendant Upreach" filed the MUI.  *Id.*, ¶ 54.

Upreach argues that it is not a state actor for purposes of § 1983 liability.  The Complaint alleges that Upreach is a "for-profit limited liability company" doing business in Ohio – an allegation to which Upreach admitted in its Answer.  *See* Compl., ¶ 4; Doc. 4, ¶ 4.

A § 1983 plaintiff must show that the alleged deprivation was caused by a person acting under color of state law.  *See Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).  "A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct."  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

The Sixth Circuit recognizes three limited circumstances in which conduct by a private actor can be fairly attributed to the state for purposes of § 1983 liability: the public function test, the state compulsion test, and the nexus test.  *Ellison*, 48 F.3d at 195.  "The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state."  *Id.* (internal quotation marks omitted) (noting the examples of running elections and eminent domain).  "The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state."

12

*Id.* "Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Id.*

The Complaint does not make reference to any of these tests, and the Court finds that none of the tests are satisfied by the alleged circumstances. Regarding the public function test, the filing of an MUI does not represent the exercise of a power traditionally reserved to the state. The right to file an MUI gives persons with knowledge of an instance of abuse, exploitation, or neglect of a developmentally disabled individual the opportunity to bring the matter to local authorities. *See* O.A.C. § 5123-17-02(D)(1). While the investigation and any determination about wrongful conduct may be an exercise of traditional state power, the filing of the MUI is a type of reporting mechanism for which the state relies on both private and public actors to provide information. To that end, the scope of persons whom Ohio law allows to file an MUI is not limited to individuals working for a state or local governmental entity. *See id.*, § 5123-17-02(C)(9), (D)(1) (providing that private persons who give care or services to the disabled individual may file an MUI).

With respect to the state compulsion test, the Complaint does not contain allegations that GSB compelled or coerced Upreach to file the MUI. The Complaint expresses uncertainty about who filed the MUI. To the extent that the Complaint could be construed to allege that GSB was supportive of the MUI (if filed by Upreach), such an allegation would be insufficient to establish compulsion. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (compulsion requires "[m]ore than mere approval"); *Lansing v. City of Memphis*, 202 F.3d 821, 829 (6th Cir. 2000) (compulsion requires more than a state's positive response to a private party's proposed action).

As for the nexus test, neither the existence of a contract between GSB and Upreach nor the existence of regulations governing Upreach's conduct in providing services to A.K. are sufficient to treat Upreach as a state actor. *Partin v. Davis*, 675 Fed. App'x 575, 587 (6th Cir. 2017) (holding that there must be "pervasive entwinement between the two entities surpassing that of a mere contractual relationship") (internal quotation marks omitted); *Lansing*, 202 F.3d at 830 ("[S]tate regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity."). *See also Wolotsky*, 960 F.2d at 1335 (private entity contracted by a county board to provide mental health services was not a state actor under the nexus test).

Rather the rely on any of the standard three tests for establishing Upreach as a state actor, the Complaint instead alleges that Upreach is liable because it conspired with state officials. *See* Compl., ¶ 161. The Sixth Circuit has recognized that a private actor "can be liable under § 1983 if he conspired

13

with a state actor to deprive [plaintiff] of his First Amendment rights." *Blackwell v. Chisholm*, No. 24-1947, 2025 WL 3091125, at *3 (6th Cir. Nov. 5, 2025) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970)). Thus, an "adequately alleged . . . conspiracy claim involving private and state actors generally suffices to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss." *Id.* (internal quotation marks and alterations omitted).

The Court finds that the Complaint does not adequately allege a conspiracy claim against Upreach, for the reasons explained above with respect to GSB and FCBDD. The Complaint does not allege the existence of a single plan of which Upreach was a part, nor does it allege that Upreach was motivated by class-based animus. Because the conspiracy claim fails, plaintiff's attempt to establish state action on the part of Upreach under § 1983 also fails.

Accordingly, the Court finds that Upreach is entitled to judgment on the pleadings on plaintiff's Equal Protection, First Amendment, and § 1985 claims.

### D. State Law Claims

"Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). *See also Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 Fed. App'x 580, 584 (6th Cir. 2011) (holding that "[c]omity to state courts is considered a substantial interest" and thus a federal court "applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues'") (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)). In determining whether to retain jurisdiction, a court should "consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, the Court declines to exercise supplemental jurisdiction over the state law claims because the federal claims have been dismissed at an early stage and because the Court has not given consideration to the merits of any of plaintiff's state law claims *See Packard*, 423 Fed. App'x at 585 (noting that "no dispositive rulings had been issued"); *Gamel*, 625 F.3d at 952 (considering whether the federal court had already "invested significant time in the litigation").

14

**IV.     Conclusion**

For the reasons stated above, defendants' motions for judgment on the pleadings (Docs. 50, 77, 104) are granted as to plaintiff's federal claims.   The state law claims are dismissed without prejudice.

Plaintiff's motions for judicial notice and to strike (Docs. 80, 94) are denied.

*s/ James L. Graham*

JAMES L. GRAHAM
United States District Judge

DATE: March 9, 2026